**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| ENERGY XXI GOM, LLC      ) | |
| ) | |
|      *Plaintiff,*      ) | |
| ) | |
| v.      ) | Civil Action No. 6:25-cv-1239 |
| ) | |
| THE UNITED STATES DEPARTMENT ) | |
| OF THE INTERIOR,      ) | |
| ) | |
| THE INTERIOR BOARD OF LAND ) | |
| APPEALS,      ) | |
| ) | |
| APRIL LOCKLER,      ) | |
| in her official capacity as Acting Director ) | |
| of the Office of Natural Resources Revenue, ) | |
| U.S. Department of the Interior,      ) | |
| ) | |
| SILVIA R. IDZIOREK,      ) | |
| in her official capacity as Chief ) | |
| Administrative Judge, Interior Board of ) | |
| Land Appeals, U.S. Department of the ) | |
| Interior,      ) | |
| ) | |
| and      ) | |
| ) | |
| STEVEN J. LECHNER,      ) | |
| in his official capacity as Deputy Chief ) | |
| Administrative Judge, Interior Board of ) | |
| Land Appeals, U.S. Department of the ) | |
| Interior,      ) | |
| ) | |
|      *Defendants.*      ) | |
| _____ ) | |

## ORIGINAL COMPLAINT

Energy XXI GOM LLC ("**Energy XXI**") files this Original Complaint against Defendant

U.S. Department of the Interior (the "**Department**"). Energy XXI respectfully shows the

following.

## PRELIMINARY STATEMENT

1.      Energy XXI timely appeals the following orders issued by the Office of Natural Resources Revenue ("**ONRR**"): (i) a denial of eleven December 19, 2018 requests to exceed regulatory allowance limitation ("**Requests to Exceed**"); and (ii) a denial of its April 13, 2020 refund request (the "**Refund Request**") (ONRR's denial of each, a "**Denial**").

2.      Energy XXI appealed each Denial separately to the ONRR Director ("**Director**").

3.      On June 7, 2023, the Director consolidated, *inter alia*, the Denial appeals and affirmed them in a single decision (the "**Decision**"). Despite the consolidation, each appeal retains its own 33-month administrative deadline under the Federal Oil and Gas Royalty Management Act ("**FOGRMA**"), as amended.

4.      Under FOGRMA, "[d]emands or orders issued by the Secretary" of the Department are subject to administrative appeal. 30 U.S.C. § 1724(h)(1). If a demand or order is appealed, the Secretary "shall issue a final decision in any administrative proceeding . . . within 33 months from the date such proceeding was commenced." *Id.* The 33-month deadline may be extended by a written agreement between the Secretary and appellant. *Id.* If the Secretary does not issue a final decision within the 33-month period, the Secretary is "deemed" to issue a final decision "affirm[ing] those issues for which the agency rendered a decision prior to the end of such period." *Id.* § 1724(h)(2).

5.      Under 30 U.S.C. § 1724(j), a lessee must commence a judicial proceeding challenging final agency action "within 180 days from receipt of notice by the lessee . . . of the final agency action." Energy XXI and ONRR disagree over the applicable dates under § 1724(h) and (j).

2

## INTRODUCTION

6.      From November 2009 through December 2016, Energy XXI produced oil and gas from wells located on federal offshore leases in the Gulf of America. As a result, Energy XXI incurred substantial capital and operating expenses for pipelines and related equipment and services to move the oil and gas off its leases for sale or delivery.

7.      The Department's regulations distinguish between two kinds of movement of oil and gas: "gathering" and "transportation." "Gathering" means moving oil or gas "to a central accumulation or treatment point on the lease . . . or to a central accumulation or treatment point off the lease . . . that BLM or BSEE approves for onshore and offshore leases, respectively." "Transportation" means "moving oil [or gas] to a point of sale or delivery off the lease." The distinction matters because "gathering" costs are not deductible from royalty payments (as "allowances"), but "transportation" costs are.

8.      Accordingly, Energy XXI properly deducted from its royalty payments the equipment and operating costs it incurred to move oil and gas off its leases as "transportation" costs. To that end, Energy XXI's agent requested a refund from the Department to recoup overpayments on past royalties.

9.      Driven by a bad-faith desire to increase revenue, ONRR denied Energy XXI's Refund Request and issued an order to perform restructured accounting ("**Order**") on June 25, 2020, arguing that Energy XXI's transportation deductions were improper. ONRR subsequently issued the Denials based on the Order's rationale.

10.      Energy XXI appealed the Denials to the Director, and the Director issued his Decision affirming the Denials on June 7, 2023.

11.      Energy XXI then appealed the Denials to the Interior Board of Land Appeals (the "**IBLA**" or "**Board**"), but the Board dismissed the Denials for lack of jurisdiction on March 6,

2025, because the 33-month deadline under 30 U.S.C. § 1724(h)(1) expired.

12.    The principal issue in this case is whether the costs Energy XXI incurred to transport oil and gas from their platforms in the Gulf of America to onshore points of sale or delivery are deductible "transportation" costs under the Department's regulations.

13.    Energy XXI brings this action against the Department under the Administrative Procedure Act ("**APA**"), 5 U.S.C. §§ 701–06; FOGRMA, 30 U.S.C. §§ 1701–59, as amended by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 ("**RSFA**"), Pub. L. No. 104-185, 110 Stat. 1700; the Outer Continental Shelf Lands Act of 1953 ("**OCSLA**"), as amended, 43 U.S.C. §§ 1331, *et seq.*; the federal royalty regulations, 30 C.F.R. Chapter XII, Parts 1200–99 (2007–2010); and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

14.    Through this action, and pursuant to the APA, 5 U.S.C. § 706(2)(A)–(F), Energy XXI respectfully requests the Decision be declared unlawful and vacated.

## JURISDICTION AND VENUE

15.    The Decision, to the extent it affirms the Denials, is not subject to further appeal within the Department. Thus, it constitutes final agency action. *See Continental Res., Inc. v. Jewell*, 846 F.3d 1232, 1233–34 (D.C. Cir. 2017).

16.    Energy XXI has suffered legal wrong from, and is adversely affected by, the Decision under 5 U.S.C. § 702.

17.    This action arises under the APA; the FOGRMA, as amended by the RSFA; the OCSLA, as amended; the federal royalty regulations; and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

18.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201–02 (declaratory relief), and 43 U.S.C. § 1349(b)(1) (actions arising out of

production of minerals on the Outer Continental Shelf ("**OCS**")).

19.    An actual controversy exists between the parties under the Declaratory Judgment Act. Under the APA, Congress has waived the sovereign's immunity from suit.

20.    Venue is proper because the Department may be found in this district. 43 U.S.C. § 1349(b); *see also Superior Oil Co. v. Andrus*, 656 F.2d 33, 41 (3d Cir. 1981) (holding that agencies administering OCSLA can be sued in Delaware because the government "may be found" there). Venue is also proper because the properties from which the cause of action arose are offshore of this district.

## PARTIES AND PROPERTIES

21.    Energy XXI is a Delaware company with its principal place of business in Dallas, Texas.

22.    Energy XXI held the following OCS leases in the Gulf of America relevant to this litigation: 0540014430, 0540020620, 0540021770, 0540029390, 0540164930, 0540217020, 0540271470, 0540272430, 8910202330, 8910202410 (collectively, the "**Leases**").

23.    The Department is a federal executive department of the U.S. government.

24.    IBLA is a review board within the Department's Office of Hearings and Appeals.

25.    Sued in his official capacity, April Lockler is the Acting Director of the ONRR.

26.    Sued in her official capacity, Silvia Idziorek is Chief Administrative Judge of the IBLA.

27.    Sued in his official capacity, Steven J. Lechner is Deputy Chief Administrative Judge of the IBLA.

## THE AGENCY DECISION UNDER REVIEW

28.    In the Decision, the Department relies exclusively on the Order to deny Energy XXI's Refund Request and requests to exceed. In doing so, the Decision and Order distinguish

"gathering" costs, which are not deductible, from "transportation" costs, which are deductible.

29.     "Gathering" means moving oil or gas "to a central accumulation or treatment point on the lease . . . or to a central accumulation or treatment point off the lease . . . that BLM or BSEE approves for onshore and offshore leases, respectively."[1]

30.     "Transportation" means "moving oil [or gas] to a point of sale or delivery off the lease."[2]

31.     Contrary to six decades of Department practice and precedent, the Decision and Order create a new bright-line rule that lessees may never claim transportation allowances for costs incurred before production reaches the royalty measurement point (the "**RMP**").

32.     The Secretary is deemed to have finally affirmed the Decision under 30 U.S.C. § 1724(h). The "Secretary" is defined by the same statute to mean "the Secretary of the Interior *or his designee.*" *Id.* § 1702(15) (emphasis added). The Secretary has, by regulation, designated the IBLA as having the authority to issue final decisions in appeals concerning payments of oil and gas royalties.

33.     The Decision must be reversed for the following reasons.

---

[1] 30 C.F.R. § 1206.101 (federal oil) (2016); *id.* § 1206.151 (federal gas) (2016) (defining gathering as "movement of lease production to a central accumulation and/or treatment point on the lease . . . or to a central accumulation or treatment point off the lease . . . as approved by BLM or BSEE OCS operations personnel for onshore and OCS leases, respectively"). Energy XXI's Refund Request relates to oil and gas sold between November 2009 and December 2016. The product-valuation regulations were revised during that period, but the definitions of "gathering" and "transportation" remained nearly identical. Accordingly, Energy XXI cites to the regulations in effect during 2016 throughout this Complaint.

[2] 30 C.F.R. § 1206.101 (federal oil) (2016); *id.* § 1206.151 (federal gas) (2016) (defining transportation as "moving unprocessed gas, residue gas, or gas plant products to a point of sale or delivery off the lease").

**COUNT I**

**THE DECISION VIOLATES FOGRMA BECAUSE IT IS BASED ON AN AUDIT THAT FAILED TO FOLLOW GENERALLY ACCEPTED GOVERNMENT AUDITING STANDARDS**

34.     Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

35.     Since at least 2017, ONRR has shown bias by pursuing a campaign of denying transportation allowances for independent operators in the Gulf of America and issuing orders for those operators to perform restructured accounting for their royalty valuations. The Order that the Department relied on to justify its Decision here is one such order.

36.     FOGRMA requires that an order to perform restructured accounting—such as the Order involved here—be based on an "audit." 30 U.S.C. § 1724(d)(4)(B)(i); *Hess Corp.*, 197 IBLA 299, 327 (2021).

37.     The Department's regulations define "audit" to be "an examination, conducted under" Generally Accepted Government Auditing Standards ("**GAGAS**")." 30 C.F.R. § 1206.20 (2023); *Hess Corp.*, 197 IBLA at 325–26.

38.     A pillar of GAGAS is that governmental auditors follow certain ethical principles, chiefly objectivity and independence. U.S. GOV'T ACCOUNTABILITY OFF., GAGAS Ch. 3 (2018). These principles demand that auditors be free from preconceptions about the subject of their work. *Id.* § 3.40(a). Thus, an audit report, GAGAS instructs, is more objective when performed by unbiased personnel. *Id.* § 9.17(b).

39.     An audit that is not objective is not GAGAS-compliant. *Id.* §§ 3.40(a), 9.17(b). Therefore, an examination that is not objective is not an "audit" under the Department's regulations.

40.     ONRR's audit of Energy XXI's royalty reporting and payment was not GAGAS-

compliant because the review was tainted by ONRR's revenue-based preconceptions against any and all "transportation allowance" claims. Therefore, the Order violates FOGRMA. 30 U.S.C. § 1724(d)(4)(B)(i); *Hess Corp.*, 197 IBLA 299, 327 (2021). In turn, the Decision violates FOGRMA because it relies exclusively on the Order to affirm the Denials. 30 U.S.C. § 1724(d)(4)(B)(i). Accordingly, the Decision must be set aside under the APA as "not in accordance with law" and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

## COUNT II

### THE DECISION FURTHER VIOLATES FOGRMA BECAUSE IT IS BASED ON AN AUDIT THAT FAILS TO FOLLOW GENERALLY ACCEPTED GOVERNMENT AUDITING STANDARDS

41.    Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

42.    Under GAGAS and IBLA precedent, auditors must obtain and report the views of responsible officials of audited entities concerning the findings, conclusions, and recommendations included in the audit report. *See* U.S. GOV'T ACCOUNTABILITY OFF., GOA-12-331G, GOVERNMENT AUDITING STANDARDS at 173 (¶ 7.33) (2011). In short, ONRR auditors must include a copy of the lessee's legal and factual positions and evaluate their validity to the extent they conflict with the auditors' positions before issuing an order. *See id* at 173–75 (e.g., ¶¶ 7.34, 7.35, 7.37, 7.38))

43.    Here, ONRR failed to obtain Energy XXI's factual and legal positions regarding the audit's findings before issuing the Order, much less include a copy of them in the Order or evaluate their validity. Thus, the Order was not based on a proper GAGAS-compliant "audit" and violated FOGRMA.

44.    Accordingly, the Decision also violates FOGRMA because it relies exclusively on the Order.

## COUNT III

### THE DECISION IS BASED ON BIAS AND PREJUDGMENT

45.    Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

46.    Even where there is no violation of FOGRMA or GAGAS, if an agency decision "rested on a pretextual basis," it must be set aside. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (finding agency decision to reinstate the citizenship question in census questionnaire was based on pretext where Secretary "was determined to reinstate" the question "from the time he entered office" for reasons unrelated to the Voting Rights Act, but under the pretext of VRA concerns).

47.    A trove of internal ONRR emails reveals that ONRR personnel harbored pervasive bias and preconceptions against the transportation allowances and refund claims submitted by Energy XXI and its agent, even though the Department's regulations expressly provide for them. These emails were based on nothing more than the desire for additional royalty revenues.

48.    Throughout the administrative proceedings, ONRR failed to dispute that the trove of emails showed bias or that there was a culture of predetermination in the appeal of the Decision. "If judicial review is to be more than an empty ritual, it must demand something better than" a pretextual explanation for a decision. *Dep't of Com.*, 139 S. Ct. at 2576; *see also Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 WL 1716243, at *3 (W.D. La. May 16, 2022) (citations omitted) ("Meaningful judicial review requires an agency to disclose the basis of its action. It does not permit an agency to obscure the actual bases for its conduct. Agencies must offer genuine justifications, including 'unwritten justifications.'").

49.    The evidence is clear: ONRR did not audit Energy XXI objectively. "Objectivity includes *independence of mind* and appearance when providing audits, maintaining an attitude of *impartiality*, having *intellectual honesty*, and being *free of conflicts of interest*." GAGAS, § 1.19 (emphasis added).

50.    Here, ONRR has demonstrated predetermination through the biased actions taken by its personnel involved. For example, the incriminating emails from ONRR employees prove ONRR facilitated a pattern and practice of unfairly denying refund requests starting around the time ONRR began auditing Energy XXI. This bias alone is sufficient to vacate the Decision and Order. *Dep't of Com.*, 139 S. Ct. at 2576; *Becerra*, 2022 WL 1716243, at *3. However, its bias also amounted to violations of GAGAS and FOGRMA, and thus renders the Decision and Order "unlawful" under the APA. 5 U.S.C. §§ 706(2)(A), (D).

51.    The Decision is arbitrary because it is a product of agency bias.

## COUNT IV
## THE DEPARTMENT DEFENDED THE ADMINISTRATIVE APPEALS IN BAD FAITH

52.    Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

53.    "[P]roof of subjective bad faith by procuring officials . . . generally constitutes arbitrary and capricious action." *Latecoere Intern., Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994).

54.    There is an exception to the "general rule against inquiring into the mental processes of administrative decisionmakers" where there is a "strong showing of bad faith or behavior." *Id.*; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Where there is a prima facie showing that there is "material in the agency's possession indicative of bad

faith," courts must look beyond the administrative record the agency chose to present. *Becerra*, 2022 WL 1716243, at *3.

55.     In addition to ONRR's bad faith in issuing the Decision and Order, ONRR exhibited bad faith by failing to "disclose the basis of its action" and "obscur[ing] the actual bases for its conduct" in its defense of these appeals. *Becerra*, 2022 WL 1716243, at *3.

56.     ONRR withheld substantial, material documentation and information from the administrative record since the beginning of the administrative appeals. Energy XXI had to spend substantial resources identifying what should be in the records but is not.

57.     On January 29, 2021, ONRR submitted the original record. Energy XXI immediately identified deficiencies.

58.     The record contained heavy redactions and many documents were withheld based on privilege. Thus, Energy XXI filed a Motion for *In Camera* Review on July 23, 2021 ("**Motion**"), so the IBLA could review documents and determine if ONRR properly withheld them.

59.     On September 18, 2023, the IBLA granted Energy XXI's Motion and ordered ONRR to provide the IBLA with "257 disputed documents for *in camera* review no later than November 7, 2023." The Board further ordered that "[a]ny assertion that a document was not directly or indirectly considered by the decisionmaker (or the staff who advised the decisionmaker) or that a document is protected by the deliberative process privilege, must be made by an agency official under oath."

60.     But even after the Board ordered ONRR to produce the disputed documents for review and attest to why ONRR withheld them from the record, former ONRR Director Howard Cantor submitted an affidavit doubling down on ONRR's erroneous privilege claims.

61.     Energy XXI also confirmed that ONRR withheld documents from the record on overbroad assertions of the deliberative process privilege. But the "privileged" documents were not "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)); *see also Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) ("The privilege protects predecisional materials 'reflecting deliberative or policy-making processes,' but not materials that are 'purely factual.'").

62.     Though the documents ONRR withheld from the record are not deliberative, even if they were, privileged documents are discoverable if there is a showing of bad faith or improper behavior. *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

63.     Where there is a strong showing of bad faith, "it may be that the only way there can be an effective judicial review is by examining the decisionmakers themselves." *Citizens to Pres. Overton Park*, 401 U.S. at 420.

64.     ONRR's bad faith actions—refusing to turn over the full administrative record for the IBLA's and this Court's review, making demonstrably false assertions of privilege regarding the administrative record, and continuing to defend the false assertions to this day—call into question the propriety of ONRR's Decision and Order.

65.     Thus, the Decision should be set aside for being issued unlawfully and without procedure required by law. 5 U.S.C. § 706(2); *Latecoere Intern., Inc.*, 19 F.3d at 1356.

## COUNT V

### THE DECISION VIOLATES THE OCSLA AND APA BECAUSE IT DOES NOT EXPLAIN ONRR'S DEPARTURE FROM LONGSTANDING PRECEDENT

66.     Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

67.     Since the 1960s, the Department agreed that "transportation" from OCS leases began on the offshore platforms, meaning costs incurred to move production ashore were deductible. In a surprise reversal of Department precedent, the Decision and Order now conclude that "transportation" does not begin until production reaches the RMP, even if that point is onshore, and even if the production is conveyed *hundreds* of miles from the offshore platform to that point.

68.     The Decision and Order cite no precedent disallowing all costs of moving production to the RMP. The position is inconsistent with numerous precedents going back 60 years.

69.     The Decision fails to acknowledge these precedents, much less explain ONRR's departure from the Department's longstanding interpretation of the regulations. It is therefore arbitrary. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220–23 (2016).

## COUNT VI

### THE DECISION VIOLATES THE OCSLA AND APA BECAUSE IT TREATS ENERGY XXI DIFFERENTLY THAN SIMILARLY SITUATED PAYORS

70.     Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

71.     The Department has consistently approved similarly situated payors' platform transportation allowances through appeals, audits, and guidance.

13

72.     In the absence of any explanation, it is arbitrary and capricious for the Department to treat Energy XXI differently than similarly situated payors in valuing production for royalty purposes. *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996).

## COUNT VII

### THE DECISION VIOLATES
### THE DUE PROCESS CLAUSE AND THE APA

73.     Energy XXI repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

74.     The Order violates Energy XXI's rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution because ONRR failed to provide fair notice of its new, counter-textual interpretation of its regulations. Thus, the Decision also violates Energy XXI's rights because it relies exclusively on the Order.

75.     The Order also violates Energy XXI's rights under the Due Process Clause of the Fifth Amendment because the Department denied Energy XXI timely access to the very information necessary to understand the final decisions. *See Amoco v. Fry*, 118 F.3d 812, 829 (D.C. Cir. 1997). Thus, the Decision violates Energy XXI's rights because it relies exclusively on the Order.

76.     The Order further violates Energy XXI's rights under the APA because ONRR's interpretation amounts to a large, likely multi-billion-dollar negative impact to producers. Thus, the Decision violates Energy XXI's rights because it relies exclusively on the Order.

## COUNT VIII

### THE DECISION VIOLATES THE APA AND FOGRMA
### BECAUSE IT DOES NOT MEET STATUTORY REQUIREMENTS

77.     Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

14

78.     The Order does not meet the statutory requirements for obligation identification, specificity, or reasoning, as required under 30 U.S.C. §§ 1702(23), 1702(26), and 1724(d)(4)(B)(ii). Thus, the Decision is arbitrary because it relies exclusively on the faulty Order.

79.     By failing to observe procedure required by law, the Decision must be held unlawful and set aside. 5 U.S.C. § 706(2)(D).

## COUNT IX

### THE DECISION VIOLATES THE APA AND FOGRMA BECAUSE IT DOES NOT ADDRESS FACTS IN THE RECORD

80.     Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

81.     On multiple other issues, the Decision arbitrarily fails to address facts, or relies on the Order which itself failed to address facts, in the record and alter the requirements of existing regulations by unlawful *ad hoc* interpretations, including willfully ignoring supplemented, probative documents submitted prior to the Director's Decision or ONRR's Order.

82.     The Decision is also based on bad faith and bias, as will be evident when the full administrative record is presented to the Court.

## COUNT X

### IN CLASSIFYING ENERGY XXI'S TRANSPORTATION AS "GATHERING," THE DECISION VIOLATES THE DEPARTMENT'S REGULATIONS

83.     Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

84.     When paying royalties, the Department's regulations generally permit lessees to deduct costs incurred for "moving oil [or gas] to a point of sale or delivery off the lease." There are only two caveats: lessees may not deduct costs incurred moving oil and gas "to a central

accumulation or treatment point on [or off] the lease," and lessees may not deduct costs incurred to put the production into "marketable condition."

85.    The Order, however, creates a new caveat out of thin air: it argues that lessees also cannot deduct costs incurred to move oil and gas to the RMP. Importantly, "central accumulation point" and "central treatment point" are entirely separate from the RMP. Indeed, the royalty-valuation regulations do not mention RMP anywhere.

86.    On top of conflicting with the regulation's plain meaning, the Order also contradicts the history and structure of the regulations.

87.    But despite common sense and longstanding precedent, the Order imposes its new rule and rejected Energy XXI's Refund Request and transportation accounting. Thus, the Order is arbitrary because it misinterprets and misapplies the Department's published regulations. Accordingly, the Decision is also arbitrary because it expressly adopts and relies on the Order.

## COUNT XI

## IN CLASSIFYING ENERGY XXI'S TRANSPORTATION AS "GATHERING," THE DEPARTMENT UNLAWFULLY DISREGARDED ENERGY XXI'S LEASES

88.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

89.    Energy XXI's Leases provide the binding obligation for royalty payment between Energy XXI and the government.

90.    Energy XXI's Leases contain the following provision for in-kind payment of royalty to the government:

> When paid in amount, such royalties shall be delivered at pipeline connections or in tanks provided by the Lessee. Such deliveries shall be made at reasonable times and intervals and, at the Lessor's option, shall be effected either (i) on or immediately adjacent to the leased area, without cost to the Lessor, or (ii) *at a more convenient point closer to shore or on shore, in which event the Lessee shall be*

16

*entitled to reimbursement for the reasonable cost of transporting the royalty substance to such delivery point.*

(Emphasis added).

91.    In other words, when taking royalty in kind, the government must pay its share of transportation from the lease to the delivery point. By denying Energy XXI's Refund Request, the Decision and Order attempted to brush aside this provision and create a requirement that the government may take a free ride to the delivery point when taking royalty in value.

92.    Thus, the Decision violates Energy XXI's Lease terms and must be reversed.

## COUNT XII

## THE DEPARTMENT' REJECTION OF
## ENERGY XXI'S ALLOCATION METHOD WAS ARBITRARY

93.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

94.    The Order claims Energy XXI had failed to file a "proposal" to use a method to allocate costs between its oil and gas products within three months of first claiming its refund. Specifically, the Decision claims that the documentation submitted by Energy XXI was insufficient to be a "proposal." This was arbitrary because ONRR had not provided notice about what constituted a proper "proposal" as required under 5 U.S.C. § 552. In turn, the Decision is arbitrary because it relies on the Order's arbitrary reasoning.

95.    The Decision is further arbitrary because it affirms the Denials based on the Order's faulty reasoning. The Order falsely asserts that "regulations and associated regulatory history reflect a clear preference for lessees to allocate transportation costs on the basis of volume." In reality, the regulations on transporting gas and liquids together are silent on a "preferred" allocation method, and the regulations on transporting gases state an initial preference for volume but give the lessee the discretion to propose a method of allocation. Moreover, the

17

gas regulations require ONRR to adopt the proposed method unless it finds the allocation inconsistent with the purposes of the regulation. 30 C.F.R. § 1206.157(b)(3)(ii) (gas) (ONRR "shall approve" the allocation for gas "unless it determines that it is not consistent with the purposes of the regulations in this part").

96.    Thus, the Decision is arbitrary and must be vacated.

## COUNT XIII

### THE DEPARTMENT HAS ARBITRARILY ADDED
### RESTRICTIONS TO THE REGULATIONS WITHOUT REQUIRED RULEMAKING

97.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

98.    The Order, through the guise of "interpretation," added a substantive requirement that arbitrarily restricts a payor's depreciation schedules.

99.    The Department unlawfully adopted the substantive requirement without following notice and comment rulemaking under 5 U.S.C. § 553. It has failed to follow a procedure required by law. 5 U.S.C.§ 706(2)(D). Thus, the Order is arbitrary. Consequently, the Decision is also arbitrary because it relies on the Order.

## COUNT XIV

### THE DEPARTMENT'S FINDING THAT
### ENERGY XXI OVERSTATED CAPITAL COSTS IS ARBITRARY

100.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

101.    The Order alleges that Energy XXI overstated certain capital costs. But Energy XXI provided the Department with information demonstrating that Energy XXI did not overstate its capital costs.

102.    Thus, the Order is arbitrary because its findings were not based on substantial

evidence in the record. *Jung Park*, IBLA 2012-65, 2012 WL 1184347, at *5 (Mar. 13, 2012) ("[A]n agency decision . . . must be supported by a proper administrative record, including a reasoned analysis of the facts leading to the decision, which provides a rational connection between the facts found and the choices made . . . ."); *John L. Stenger*, 175 IBLA 266, 279–80 (2008).

103.     Accordingly, the Decision is also arbitrary because it relies exclusively on the Order.

**COUNT XV**

**THE DEPARTMENT'S FINDING THAT ENERGY XXI FAILED
TO SUPPORT TRANSPORTATION ALLOWANCES IS ARBITRARY**

104.     Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

105.     The Order contends that Energy XXI did not provide the information necessary to support its determination of allowable capital costs and operating expenses. Specifically, the Order faults Energy XXI for not demonstrating that each capital and operating cost was "actually incurred and associated with depreciable fixed assets integral to transporting the production."

106.     But Energy XXI did demonstrate that each capital and operating cost was incurred and associated with depreciable fixed assets.

107.     Thus, the Order is arbitrary because it concludes, contrary to the evidence, that Energy XXI failed to provide records to support its transportation allowances and because it imposes a novel requirement out of whole cloth. In turn, the Decision is arbitrary because it relies exclusively on the Order.

**COUNTS CONCERNING THE STRUCTURE OF ONRR AND IBLA**

108.     This suit concerns the unauthorized actions of two agencies within the Department.

19

109.　　This Court has subject-matter jurisdiction over the following counts concerning the structure of ONRR and IBLA because "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023).

110.　　One of the agencies is ONRR, headed by the Director. ONRR is responsible for the collection of royalties owed under the terms of federal oil and gas leases and for issuing demands, orders, subpoenas, and notices leading to civil penalties.

111.　　The other is the IBLA, an administrative appellate body within the Department's Office of Hearings and Appeals.

112.　　On June 7, 2023, the Director issued the Decision. Energy XXI timely appealed the Decision to the Board, docketed as IBLA 2023-0183.

113.　　IBLA is a board created by Secretarial Order entitled a "Delegation of Authority." 35 Fed. Reg. 12081 (July 28, 1970). IBLA is ultimately superintended by the Assistant Secretary for Policy, Management, and Budget.

114.　　ONRR is an office created by Secretarial Order. Secretarial Order 3299 (May 19, 2010). ONRR is also superintended by the Assistant Secretary for Policy, Management, and Budget.

115.　　Mr. Howard Cantor served as Director from 2023 through early 2025. He issued the Decision.

116.　　Ms. April Lockler has served as the Acting Director since May 2025. She is a member of the Senior Executive Service.

117.　　Administrative Judge Silvia Riechel Idziorek has served on the IBLA for many years. Effective August 17, 2023, she was appointed Chief Administrative Judge. Her

appointment was not ratified by the Secretary of the Interior.

118.     Administrative Judge Steven J. Lechner has served as Deputy Chief Administrative Judge of the IBLA since April 26, 2020. His appointment was not ratified by the Secretary of the Interior.

119.     Both the Director and the Board's administrative judges (positions not to be confused with Administrative Law Judges ("**ALJs**")) act with the authority granted under the Constitution to Officers of the United States. Although they are members of the career civil service, they perform the functions of "inferior Officers," as Article II of the Constitution uses that term. Inferior Officers may be appointed only by the President, courts of law, or a "head of department." U.S. CONST. art. II, § 2, cl. 2.

120.     Energy XXI challenges the Director's authority to issue the Decision. Energy XXI also challenges the Board's authority to serve as a cure for the Director's lack of authority through the appeals process.

121.     The Director and the Board's administrative judges have been improperly appointed. There is no publicly available record of the Director being appointed by the Secretary of the Interior under Article II. Although there is some evidence that the Board's judges have been appointed by the Secretary, there is no publicly available record that the appointment complied with the law creating their office or is consistent with their status under the law governing federal employment. The offices of both the Director and the Board's administrative judges are created under the Reorganization Act of 1949, which limits the tenure of appointees.

122.     The decisions of, and proceedings conducted by, the Director and the Board's administrative judges violate Article II of the U.S. Constitution because their appointments violate the Appointments Clause and the statute creating their offices, meaning they have not

been appointed to offices "established by law." U.S. CONST. art. II, § 2, cl. 2.

123.    Moreover, they are unconstitutionally insulated from presidential removal by two layers of tenure protection.

124.    First, the Director is a member of the Senior Executive Service. He may be removed only for "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *See* 5 U.S.C. §§ 3132(a)(2) (defining a Senior Executive Service position), 7543(a) (limiting removal). He may appeal his removal to the Merit Systems Protection Board ("**MSPB**").

125.    Second, the administrative judges are career civil servants in either the Competitive Service, the Excepted Service, or the Senior Executive Service. If a judge is part of either the Competitive or Excepted Service, they may be removed only for "such cause as will promote the efficiency of the service." 5 U.S.C. §§ 7511(a), 7513(a). If a judge is part of the Senior Executive Service, they may be removed to the same extent as the Director, as described above. Either way, the judge has a right to appeal an adverse action to the MSPB for review. Id. §§ 7513(d) (Competitive and Excepted Service), 7543(d) (Senior Executive Service).

126.    At the second level of the process, members of the MSPB are appointed by the President and confirmed by the Senate, 5 U.S.C. § 1201, but may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office," *id.* § 1202(d). Thus, the Director and administrative judges are unconstitutionally shielded by two layers of for-cause removal protections, leaving them unaccountable to the President in violation of Article II.

127.    Through this action, Energy XXI respectfully seeks review of the constitutionality of the Director's position and the administrative judges' positions as inferior Officers of the United States.

## COUNT XVI

## THE DIRECTOR'S APPOINTMENT VIOLATES ARTICLE II

128.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

129.    Former Director Cantor, who issued the Order and the Decision, was appointed in violation of the Appointments Clause and the principle of separation of powers in the United States Constitution, U.S. CONST. art. II, § 2; see *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 130 U.S. 447 (2010), and in violation of the Reorganization Act of 1949, 5 U.S.C. §§ 901 *et seq.*

130.    The Director's defective appointment is not cured by the availability of appeal to the IBLA, for the Board's administrative judges, too, hold office in violation of the Appointments Clause and the separation of powers under the U.S. Constitution.

131.    Under the Article II Appointments Clause, only the President, a court of law, or a head of department can appoint "Officers of the United States." U.S. CONST. art. II, § 2, cl. 2; *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044, 2051 (2018). A government official is an "officer" of the United States if she occupies a continuing position established by law and exercises significant authority pursuant to the laws. *Lucia*, 138 S. Ct. at 2051; *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (concluding members of a federal commission were officers because they "exercis[ed] significant authority pursuant to the laws of the United States"); *United States v. Germaine*, 99 U.S. 508, 511 (1879) (providing that an individual must occupy a continuing position established by law to qualify as an officer).

132.    An officer occupies a continuing position established by law when they are appointed to a career position pursuant to statute and their salary and means of appointment are determined by statute. *See Lucia*, 138 S. Ct. at 2053 (finding that Securities and Exchange

Commission ALJs hold a continuing office established by law because they "receive a career appointment," which is "created by statute, down to [their] duties, salary, and means of appointment" (quotation marks omitted)); *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (holding that IRS special trial judges hold a continuing office established by law because they serve on an ongoing basis and their "duties, salary, and means of appointment" are specified by statute). As a career civil servant in the Senior Executive Service, the Director is appointed to a career position pursuant to statute. 5 U.S.C. § 3393. His salary and means of appointment are also determined by statute. Moreover, the Director's position is continuing—not merely "temporary" or "episodic"—because he may only be removed for cause. *Id.* § 7543. Thus, the Director occupies a continuing position established by law.

133.    An officer exercises significant authority pursuant to the laws when they have significant discretion in implementing and enforcing the laws. The ONRR Director has broad authority to "issue severe sanctions in [his] disciplinary proceedings," impose "money penalties," and "initiate formal investigations." *Free Enter. Fund.*, 561 U.S. at 485. He oversees the day-to-day functions of all ONRR offices, which are responsible for enforcing payments of royalties of Federal and Indian energy and mineral revenues. DEP'T OF THE INTERIOR, DEPARTMENT MANUAL 112, section 34.5 (2020). Under the Director's leadership and policies, ONRR teams conduct audits, identify parties responsible for violations, investigate violations, and issue appropriate enforcement actions, including civil penalties. *Id*. He also has the authority to review appeals of agency orders and render final decisions. 30 C.F.R. § 1290.105(f). Thus, the Director exercises significant authority pursuant to the administration and enforcement of the laws.

134.    Therefore, the Director is an officer of the United States because he occupies a continuing position established by law and exercises significant authority pursuant to the laws.

135.    On information and belief, former Director Cantor was not appointed by the President, the Secretary of the Interior, or a court of law. His position as an officer, therefore, violated the Appointments Clause of Article II.

## COUNT XVII
## THE DIRECTOR'S APPOINTMENT FURTHER VIOLATES ARTICLE II

136.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

137.    Even if former Director Cantor was appointed by a proper party, his position would still have violated the Appointments Clause. The Appointments Clause requires that Congress vest in the President, a court of law, or a head of department the power to appoint "Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law." U.S. CONST. art. II, § 2, cl. 2 (emphasis added); *see also Lucia*, 138 S. Ct. at 2051 ("[A]n individual must occupy a 'continuing' position established by law to qualify as an officer."). Thus, an officer's appointment must comport with the law which establishes her office to satisfy Article II.

138.    The Director's position was created indirectly under the Reorganization Act of 1949, 5 U.S.C. §§ 901–906, and pursuant to Reorganization Plan No. 3 of 1950 (the "Reorganization Plan"), 64 Stat. 1262, 15 Fed. Reg. 3174 (1950). Broadly, the Reorganization Act permits the President to abolish, transfer, or consolidate functions of any agency in the Executive Branch. More specifically, the Act allows the President to "provide for the appointment and pay of the head . . . of any agency (including an agency resulting from a consolidation or other type of reorganization)." 5 U.S.C. § 904(2). However, an appointed head's term "may not be fixed at more than four years." *Id.* § 904.

139.    The Reorganization Plan transferred all functions of officers within the Department to the Secretary, allowing the Secretary to authorize "from time to time" the "performance by any other officer, or by any agency or employee," of the Secretary's functions. 64 Stat. 1262, §§ 1, 2. In 2010, the Secretary issued Secretarial Order 3299 under his authority pursuant to the Reorganization Plan, establishing ONRR and the Director as its leader. Secretarial Order 3299, § 5 (May 19, 2010). However, the Secretarial Order did not limit the Director's term to no more than four years, as required by the Reorganization Act. Thus, former Director Cantor's appointment violated the Appointments Clause because his appointment for an indefinite time does not conform with the law that establishes his position, which expressly limits his tenure to four years.

## COUNT XVIII

## THE DIRECTOR'S REMOVAL PROTECTIONS VIOLATE ARTICLE II

140.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

141.    The Director's position further violates Article II of the U.S. Constitution because the Director is insulated from at-will removal by the President or the Secretary. *See Free Enter. Fund*, 561 U.S. at 496 (explaining that a dual-layer of for-cause protection from removal "is contrary to Article II's vesting of the executive power in the President" because the President loses the ability to "ensure that the laws are faithfully executed" or be held responsible for an executive officer's breach of faith); *Myers v. United States*, 272 U.S. 52, 117 (1926) ("[A]s [the President's] selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible."). As a member of the Senior Executive Service, the Director may only be removed from office for "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to

accompany a position in a transfer of function." 5 U.S.C. § 7543(a). Any adverse action taken against the Director can, then, be appealed to the MSPB, the members of which in turn may only be removed by the President for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

142.    This scheme of for-cause protections unconstitutionally insulates the Director from at-will removal by the President, violating the principle of separation of powers and the Vesting Clause of Article II.

**COUNT XIX**

**THE IBLA JUDGES' APPOINTMENTS VIOLATE ARTICLE II**

143.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

144.    The administrative judges of the IBLA are officers of the United States because they occupy continuing positions established by law and exercise significant authority under the laws. *See Lucia*, 138 S. Ct. at 2054 (holding that the SEC's ALJs are officers of the United States); *Freytag*, 501 U.S. at 881 (holding that the IRS's special trial judges are officers of the United States).

145.    The administrative judges are appointed by the Secretary of the Interior under the Reorganization Act of 1949. 5 U.S.C. §§ 901–906; *see also* 15 Fed. Reg. 3174 (1950) (Reorganization Plan authorized by President Truman transferring most functions within the Department to the Secretary, and allowing the Secretary to delegate his duties to "performance by any other officer, or by any agency or employee"); 35 Fed. Reg. 12081 (1970) (Delegation of Authority signed by the Secretary establishing the IBLA and authorizing it to exercise "the authority of the Secretary in deciding appeals to the head of the Department from findings of fact or decisions rendered by Departmental officials relating to the use and disposition of public lands

and their resources and the use and disposition of mineral resources in certain acquired lands of the United States in the submerged lands of the Outer Continental Shelf").

146.    The Reorganization Act, however, limits the appointment of officers to terms not longer than four years, whether those officers serve as "an individual or a commission or board with more than one member." 5 U.S.C. § 904. Silvia R. Idziorek and Steven J. Lechner were appointed or ratified by the Secretary. OFF. OF HEARINGS & APPEALS, INTERIOR BD. OF LAND APPEALS, APPOINTMENT OF SILVIA RIECHEL IDZIOREK AS CHIEF ADMINISTRATIVE JUDGE (Aug. 17, 2023); OFF. OF HEARINGS & APPEALS, INTERIOR BD. OF LAND APPEALS, APPOINTMENT OF STEVEN J. LECHNER AS DEPUTY CHIEF ADMINISTRATIVE JUDGE (April 13, 2020).

147.    However, nothing in the documents creating their offices or effecting their appointments limits their terms to a maximum of four years, as required under the Reorganization Act. *See* 5 U.S.C. § 904 (limiting terms of agency heads to four years). As officers of the United States leading the IBLA, Idziorek and Lechner were appointed in violation of the Reorganization Act because their appointments do not conform to the four-year limitation established by law. Consequently, their appointments by the Secretary violate the Appointments Clause of the U.S. Constitution.

## COUNT XX

### THE IBLA JUDGES' APPOINTMENTS FURTHER VIOLATE ARTICLE II

148.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

149.    Secretary Bernhardt initially ratified the Idziorek's appointment, declaring her appointment to the Excepted Service. SEC'Y OF THE INTERIOR, RATIFICATION MEMORANDUM (ratifying the prior appointment of Silvia R. Idziorek to the position of Administrative Judge in the Office of Hearings and Appeals). However, her office is not part of the Excepted Service. No

document provided by the Department discloses whether Lechner was appointed to the Excepted Service.

150.    The establishment of a position within the Excepted Service requires prior approval of the President, Congress, or the Office of Personnel Management. There is no record of approval from any of these sources of authority.

151.    Furthermore, under the Reorganization Act, these appointments were required to be of people within the "Competitive Service." 5 U.S.C. § 904. An appointment to a position in the Excepted Service is not authorized under the Reorganization Act.

152.    Thus, Idziorek's and Lechner's appointments were not to offices established by law and, therefore, violate Article II.

### COUNT XXI

### THE IBLA JUDGES' REMOVAL PROTECTIONS VIOLATE ARTICLE II

153.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

154.    The administrative judges' positions violate the principle of separation of powers and the Vesting Clause of Article II because they are insulated from at-will removal by the President. U.S. CONST. art. II, § 1, cl. 1; *see also Free Enter. Fund*, 561 U.S. at 496. If the judges are members of the Senior Executive Service, they may only be removed from office, like the Director, for "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). If the judges are members of the Competitive Service or Excepted Service, they may be removed only for such cause that "will promote the efficiency of the service." *Id.* § 7513(a). That cumbersome process requires the agency to (1) show the officer engaged in misconduct, (2) explain the rational nexus between the misconduct and "the efficiency of the service," and (3) establish, in the

officer's individual case, that removal takes reasonable account of up to a dozen factors relevant to the promotion of "service efficiency." *King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996) (holding that to discipline an employee "for such cause as will promote the efficiency of the service," the government must show that "(1) the employee engaged in misconduct; and (2) there exists a nexus between the misconduct and the efficiency of the service"); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1540 (Fed. Cir. 1984).

155.    In either event, whether the administrative judges are in the Competitive, Excepted, or Senior Executive Service, their removal may be appealed to the MSPB, whose members in turn may only be removed by the President for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d). This scheme of dual-layer for-cause protections unconstitutionally insulates the administrative judges from at-will removal by the President and violates the President's power to ensure that the laws of the United States are faithfully executed.

## COUNT XXII

### THE REMOVAL PROVISIONS CANNOT BE
### SEVERED FROM THE CIVIL SERVICE REFORM ACT

156.    Energy XXI repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

157.    One of the chief goals of the Civil Service Reform Act of 1978 was to provide significant protection from at-will removal. The Civil Service Reform Act "comprehensively overhauled the civil service system," creating "a new framework for evaluating adverse personnel actions against" employees. *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 773–74 (1985). Severing the twin removal protections from the Act would give the law "an effect altogether different from that sought by the measure viewed as a whole." *N.J. Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018) (quotation marks omitted).

158.    Because the protections from removal cannot be severed from the law, the Order and Decision must be vacated. *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020) ("If the removal restriction is not severable, then we must grant the relief requested [to vacate the agency order].").

## **PRAYER FOR RELIEF**

WHEREFORE, Energy XXI prays the Court:

1)  Vacate the Decision and underlying Denials;

2)  Hold the Decision unlawful as arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law; contrary to constitutional right, power, or privilege; excessive of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; and unsupported by substantial evidence;

3)  Enter declaratory judgment that the Decision is unlawful, that the Department unlawfully disregarded regulations and Department precedent as to the oil and gas production at issue, and that such production must be permitted transportation allowances for costs incurred;

4)  Enter declaratory judgment that the ONRR Director and the IBLA judges have been appointed and operating in the capacity of an Officer in violation of Article II of the U.S. Constitution of the separation-of-powers principle, and of the Reorganization Act of 1949;

5)  Enter declaratory judgment that Energy XXI is awarded and to be refunded all principal amounts requested, including interest amounts, to the extent permitted by law and, to the extent warranted, compel any agency action that has been unlawfully withheld and unreasonably delayed;

6)  Enter declaratory judgment that Energy XXI may retain allowances previously calculated;

7)  Award Energy XXI costs and attorneys' fees to the extent permitted by law; and

8)  Grant such other relief as may be appropriate in the circumstances.

Dated: August 25, 2025.

Respectfully submitted,

By: */s/ Ashlee Cassman Grant*
    Ashlee Cassman Grant
    LA Bar No. 33052
    811 Main Street, Suite 1100
    Houston, Texas 77002
    Phone: (713) 646-1364
    Fax: (713) 751-1717
    agrant@bakerlaw.com

**Attorney for Plaintiff Energy XXI Energy GOM, LLC.**